UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES J. SIGNORE,

    Plaintiff,

v.                              CASE NO. 8:12-cv-935-T-27MAP

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    This is an action for review of a denial of Disability Insurance Benefits. *See* 42 U.S.C. § 405(g). The Plaintiff maintains the ALJ erred by finding he retained the residual functional capacity (RFC) to perform light work, by failing to set forth specific reasons for rejecting the opinions of treating chiropractor Koval that would preclude performance of light work, and posing a defective hypothetical to the vocational expert. Upon review, I find the ALJ's decision is supported by substantial evidence. Accordingly, I recommend his complaint be dismissed and the Commissioner's decision affirmed.[2]

    *A.  Standard of Review*

    To be entitled to disability insurance benefits a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

---

[1] Colvin became the Acting Commissioner of Social Security on February 14, 2013, replacing Micahel J. Astrue who resigned effective February 13, 2013.

[2] The district judge referred the matter to me for a report and recommendation. Local Rule 6.01(c)(21).

continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the claimant can perform his past relevant work. If the claimant cannot perform the tasks required or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do no other work in the national economy in view of his age, education, and work experience. A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137 (1987); 20 C.F.R. §§ 404.1520(f).

The standard of review here is limited to determining if the Commissioner's findings are supported by substantial evidence and whether the Commissioner's ultimate conclusions are legally correct. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389 (1971). "Substantial evidence" consists of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists. 42 U.S.C. § 405(g); *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064,

1066 (11th Cir. 1994). Further the Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066; *Jamison v. Bowen*, 814 F.2d 585 (11th Cir. 1987) (remand for clarification).

*B. Background*

Born on July 4, 1954, Plaintiff was 47 years old when he was last insured for disability benefits on December 31, 2001 (R. 31). He is a high school graduate and has worked primarily as a machine operator. After an on-the-job injury in December 1983, Plaintiff underwent two laminectomy surgeries and numerous facet block and epidural injections. Unfortunately, Plaintiff's back pain continued, and in 1996, the Chicago Laborer's and Retirement Board allegedly awarded him disability benefits as a result.[3] Plaintiff alleges disability commencing December 1, 1996, due to multiple herniated disks, anxiety, spondylosis and radiculitis, anxiety and depression. Plaintiff's last date of insured status was December 31, 2001. During the relevant time frame (December 1, 1996 through December 31, 2001), Plaintiff lived with his wife and minor daughter, and helped with household chores and tasks to the extent that he was able to depending on his level of pain each day. Although the ALJ concluded the Plaintiff could no longer work as a machine operator, he nonetheless possesses the residual functional capacity for a limited range of light work and could perform other work in the national economy.[4] Based on the testimony of a vocational expert, the

---

[3] Although the record contains several treating source statements submitted to the board, the record does not contain the board's decision. The board's decision is unclear, and the basis and standard for its disability determination is unknown. It is also unknown whether the board found Plaintiff unable to perform his past work or disabled from all work.

[4] The regulations define "light work" as: work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the

ALJ found the Plaintiff could meet the demands of office helper, parking lot cashier, and ticket taker. The Plaintiff appealed, and the Appeals Council declined review (R. 1-3). At this juncture, the Plaintiff has exhausted his administrative appeals, and the ALJ's decision is the final decision.

*C. Discussion*

*1. RFC*

Plaintiff claims the ALJ erred by finding he retained the residual functional capacity (RFC) to perform lift work. In part, the Plaintiff asserts the ALJ erred because he relied on the assessment of a single decision maker (SDM) whose opinion is not entitled to any weight.[5] Upon review, I find that although the ALJ mistakenly referred to a SDM as a state agency medical consultant, the error was harmless. The ALJ indicates in his decision that he considered all of the evidence in the record in reaching his RFC determination, including evidence from treating sources and objective medical evidence (R. 18-22). And, as the regulations provide, final responsibility for determining RFC rests with the ALJ. *See Cooper v. Commissioner of Social Security,* 2013 WL 2451030 (11th Cir. 2013) (unpublished) (finding ALJ's undue reliance on SDM's opinions harmless where ALJ considered *all* evidence in the record).

The ALJ indicated that there is evidence showing the Plaintiff continued to receive treatments

---

weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *See* 20 C.F.R. § 404.1567(b).

[5] A "single decisionmaker" is not one of the "acceptable medical sources" the Commissioner is to consider when evaluating a disability claim. *See* 20 C.F.R. § 404.1513 (listing "acceptable medical sources").

for his impairments well after the expiration of his DLI (December 31, 2001), and noted that the Plaintiff testified that his condition has worsened over time. In reaching his RFC determination, the ALJ stated the Plaintiff must establish his impairments reached disabling status prior to expiration of his insured status and concluded that the Plaintiff had failed to do so. He opined: "During the period at issue December 1, 1996 through the date last insured December 31, 2001, the medical evidence in the record indicates that his impairments were not so severe as to prevent him from performing substantial work activity" (R. 19). To support his RFC determination, the ALJ summarized chronologically the Plaintiff's medical treatment during the relevant time frame of December 1, 1996, through the DLI, December 31, 2001. The ALJ discussed a one page report by Dr. James Mansfield, dated April 27, 1993, prior to the relevant time frame (Ex. 24F). He discussed MRI results: a lumbar MRI results revealing a small disc herniation at L5-S1 dated March 8, 1995 (Ex. 1F), a cervical spine MRI results showing stenosis of left C3-4 neural foramen secondary to facet joint disease and cervical spine MRI results showing T3-4 effacement of subarachnal space (but not showing any cervical herniation) (Ex. 2F), and a cervical spine MRI showing no significant canal narrowing, minimal posterior C2-3 disc bulge, and mild left C3-4 foraminal narrowing (Ex. 9F). And, he discussed Plaintiff's brief treatment with cardiologist Dr. Gene Myers, from January 26, 2000, through April 3, 2000 (Ex. 3F). Dr. Myers performed cardiac catheterization which revealed mild dysfunction of the left ventricle with mild dilation and minimal coronary artery disease. Dr. Myers' notes indicate Plaintiff complained of chest pain and possible etiology was cervical spine disease (Ex. 3F, p.1).

The ALJ described Plaintiff's treatment with gastroenterologist Norman Aprill, in July 2000. While the GI workup was negative, Dr. Aprill's notes indicate Plaintiff was quite anxious and

complained of left chest discomfort (Ex. 4F). The ALJ discussed treatment records of Dr. Bruno Gallo, neurologist, dated November 2, 2000, through December 26, 2001, that revealed complaints of neck, bilateral shoulder, thoracic, back and left lower extremity pain, worst in his neck. Dr. Gallo observed no signs of distress, sitting comfortably, and pleasant, and normal nerve conduction studies (Ex. 7F). The ALJ noted that Plaintiff underwent cervical facet blocks in November and December 2000 (Ex 7F) and treated with orthopedist Eric Herman in March 2001 for cervical and thoracic pain (Ex. 6F). Dr. Herman's notes indicate Plaintiff had not had any physical therapy, and recommended an exercise program in increase strength of the cervical spine and upper back. Dr. Herman indicated Plaintiff was not interested in surgical treatment for his thoracic spine herniation, and that Plaintiff reported that he is very functional and very active at home, and that an aerobic exercise program will add significant benefit and reduce his generalized pain and stiffness (Ex. 6, p.5). The ALJ discussed that Plaintiff treated with Dr. Gallo on September 25, 2001, after a long hiatus. The ALJ noted Dr. Gallo's records indicated Plaintiff continued to complain of pain, and appeared to be in no great distress although he does fidget (Ex. 7F, p.3). The ALJ stated that on December 26, 2001, Dr. Gallo noted that Plaintiff might be having pain from a small disc bulge at T3-4, but Plaintiff does not want to consider surgery (Ex. 7F, p.2).

After considering the above-described record evidence concerning Plaintiff's medical treatment during the relevant time frame, the ALJ considered Plaintiff's testimony and allegations, evidence concerning his daily activities, and opinion evidence, and then reached his RFC determination. Aided by the testimony of a vocational expert, the ALJ concluded the Plaintiff could perform light work with a sit/stand option, including jobs like parking lot cashier, ticket taker, and office helper (R. 26). *See* n.4. Of course, the burden rests with the Plaintiff to establish existence

of disability by providing evidence that shows he is disabled. 20 C.F.R. §404.1512(a). Moreover, the ALJ did not assign any weight to the SDM's opinions, he merely noted that he considered the evidence and found that it "did not provide any mew or material information that would alter any findings about the severity of the claimant's alleged impairments" (R. 24). In any event, the SDM opined only that: "[Plaintiff's] present profile would suggest that prior to his date last insured, he possibly was functioning at light levels. However, NH's data on hand pertaining to that time frame is insufficient to establish a clearer assessment of his capacities during the era in which he was insured." (*See* R. 385). I find the ALJ's RFC determination is supported by substantial evidence and that his reference to the SDM's opinions as those of a state agency consultant was only a harmless error.

### 2. Chiropractor's opinions

Plaintiff asserts the ALJ erred in failing to set forth specific reasons for rejecting the opinions of Koval, his chiropractor. In July 1997, Koval completed a "disability release form" indicating that Plaintiff's restrictions included lifting, pushing and pulling 10 pounds, and sitting for fifteen minutes. On the same form, Koval commented that Plaintiff was "permanently disabled by the state" (R. 466). After the relevant time frame, in April 2006, Koval indicated on a form for the Laborers and Retirement Board Employees' Annuity and Benefit Fund of Chicago that Plaintiff is "unable to lift stand walk without pain" (R. 350). The ALJ's decision reveals that he considered Koval's opinions and rejected them as unsupported by the objective medical record as a whole (R. 24). Accordingly, the ALJ assigned little weight to Koval's opinions. Per the regulations, a chiropractor is not an acceptable medical source, and therefore, Koval cannot be considered a treating source and his opinion is not entitled to controlling weight. *See* 20 C.F.R. §404.1513(a), (d)(1). *See also* SSR 06-

03p (advising that ALJ should generally explain weight given to opinions of other sources); *Crawford v. Comm'r of Social Security,* 363 F.3d 1155, 1160 (11th Cir. 2004). I find the ALJ properly considered Koval's opinions, and his decision to accord little weight to Koval's opinions is supported by substantial evidence and consistent with the applicable regulations.[6]

### 3. VE hypothetical

Plaintiff maintains that the ALJ posed an inaccurate hypothetical to the VE that failed to comprehensively account for all of his limitations. Specifically, the Plaintiff indicates the hypothetical should have included his inability to lift, stand or walk without pain, per Koval's opinions. The ALJ must pose an accurate hypothetical that takes into account all the claimant's impairments. *Wind v. Barnhart,* 133 Fed. Appx. 684 (11th Cir. 2005); *Pendley v. Heckler,* 767 F.2d 1561 (11th Cir. 1985). The ALJ's hypothetical posed to a vocational expert must comprehensively describe the plaintiff's limitations. *Id.* at 1563. Of course, the ALJ is not required to include limitations found not credible, and submits to the expert only those supported by objective evidence of record. *Crawford, supra,* 363 F.3d at 1160-61; *McSwain v. Bowen*, 814 F.2d 617, 620 n.1 (11th Cir. 1987). Here, as discussed above, the ALJ assigned little weight to Koval's opinions, finding them inconsistent with the objective record evidence. Accordingly, the ALJ included those limitation he found credible in the VE hypothetical. I find the ALJ's hypothetical complete and his reliance upon the VE's testimony in response to his questions proper.

The Plaintiff further maintains that the VE's testimony conflicts with the DOT. Specifically, the Plaintiff indicates the VE's testimony that an individual who is limited to "frequent reaching in

---

[6] As the Commissioner noted, the ALJ mistakenly cited to the medical source statement rule set forth in 20 C.F.R. §404.1527 and 416.927 which is inapplicable to Koval, a chiropractor. *See* R. 24.

8

all directions" can perform work as a ticket seller is inconsistent with the DOT as this job entails constant reaching (doc. 12, p.24). Social Security Ruling 00-4p addresses situations where an ALJ elicits testimony from a VE and that testimony conflicts with the occupational information found in the DOT. When a VE provides evidence about the requirements of a job or occupation, Social Security Ruling 00-4p requires the ALJ to ask about any possible conflict between the VE evidence and information provided in the DOT. If the VE's evidence appears to conflict with the DOT, Social Security Ruling 00-4p directs the ALJ to obtain a reasonable explanation for the apparent conflict. Social Security Rulings constitute agency rulings published under the authority of the Commissioner of Social Security and bind all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1); *Sullivan v. Zebley*, 493 U.S. 521, 531 n. 9 (1990). Accordingly, the ALJ was required to comply with the mandates of Social Security Ruling 00-4p.

During the hearing, the ALJ explicitly asked the VE if his opinion was consistent with the DOT and the VE responded it was with the exception of the sit/stand option that was based on his education, training, and experience.[7] (R. 53). Given the VE's response, as no apparent unresolved conflict between the VE's testimony and the DOT existed, the ALJ was not required to elicit a "reasonable explanation" from the VE as to the supposed conflict. *Miller v. Commissioner of Social Security,* 246 Fed. Appx. 660 (11th Cir. 2012). Notwithstanding the foregoing, Plaintiff contends the VE's testimony in fact conflicts with the occupational information in the DOT, and the ALJ has the duty to fully develop the record and to resolve this conflict, though not apparent at the time of the hearing. Plaintiff's contention, however, does not find support in controlling case law. And,

---

[7] Additionally, Plaintiff's counsel cross-examined the VE and did not identify any inconsistencies between the VE's testimony and the DOT during the hearing.

Plaintiff has failed to show that he is incapable of performing the jobs of office helper and parking lot cashier, also identified as available jobs in the national economy.

   D.  *Conclusion*

For these reasons, it is hereby

RECOMMENDED:

1. That the Commissioner's decision be affirmed and the Plaintiff's complaint be dismissed.

IT IS SO REPORTED at Tampa, Florida on August 9, 2013.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).